MURRAY    v.    DERA    KNIGHTS    OF
FRIENDSHIP, ETC., Appellant

———

(Oct. 18, 1926.   Opinion and Decree.)

———

1.  Louisiana        Digest—Associations—Par.
     16, 21.

The beneficiary of a member of a fraternal organization has no claim against the organization when its by-laws provide that a member in default for the payment of dues shall be suspended from all rights as a member and when the certificate of memberships provides that payment shall be made on proof that the member was in good standing, when it is shown that the member is in default for the payment of his dues, although he may be readmitted on payment of dues within a stated time.

2.  Louisiana        Digest—Associations—Par.
     2, 21.

But where the by-laws of the organization provide that a re-admitted mem-

ber shall not enjoy the benefits granted by the organization for a period of sixty days after he shall have paid up all arrearages, the death of the member within the sixty days bars recovery of the beneficiary.

Appeal from the First City Court, Hon. Henry Renshaw, Judge.

Action by Louise Murray (Widow George Murray) against Dera Knights of Friendship and Silver Moon Lodge No. 69.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

E. Lazier, of New Orleans, attorney for plaintiff, appellee.

Eraste Vidrine, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J.    This is a suit for an insurance benefit.

The plaintiff alleged that her husband died on October 4, 1921, and that at the time of his death he was a member in good standing of the Silver Moon Lodge; that her said husband held a policy in said lodge; that she was the beneficiary under said policy and entitled to receive thereunder $225 at the death of her husband, on account of which she had received $25.

The defendants admitted the policy and the death and the payment of $25 in full settlement, but denied all the other allegations of the petition.

There was judgment for plaintiff as prayed for, and defendants have appealed.

We gather from the briefs that the defense is that the deceased did not pay "for the quarters beginning July 1st and October 1, 1921, when he died, October 4, 1921; that by reason of his failure to make the payment due July 1, 1921, he was suspended pursuant to Section 42 of the organization's constitution and by-laws; and that by reason of his failure to pay those July dues sixty days after they became due, he, ipso facto, ceased to be a member pursuant to Section 43".

Section 42 reads as follows:

"If any member shall fail to pay when due his or her grand lodge tax or shall fail to pay his or her Supreme Lodge or Endowment Funds due in ten days after same are due and payable, or shall fail to pay when due any of his or her dues to the local lodge or any fine imposed or assessment levied upon him ·or her; in either case such member shall thereupon be suspended from all rights as a member of this order, including sick benefits and rights as a policy holder.  After such default and suspension, the suspended member may be reinstated by paying within 60 days from such default all amounts over-due and unpaid together with a fine of 25 cents for each amount or item so in default, and also all amounts that may have become due to the local lodge during the intervening space, with a further fine of 25 cents or any of such latter payments as may also be in default.  But such member shall not be reinstated to all rights to sick benefits or as certificate holder for a period of 60 days after he or she shall have paid up all arrearages and fines as above provided."

Section 43:  "If a member in default for any dues, fines or assessments, shall not pay same in 60 days from the time same may be due, he or she shall thereby and thereupon cease to be a member of this order, and lose and forfeit all rights and privileges as a member and all claims and demands as a certificate holder or otherwise."

The certificate itself provides:

"That the Supreme Lodge of the Dera Knights of Friendship of the U. S. A., will pay to the surviving wife of George Murray at his death a Burial Emergency of $225 contingent however, upon proof at his death that he has fully complied with the laws of this order and was in good stand-

ing at the time of his death, and having fully paid all Supreme Lodge dues and benefit tax and the records of the said Supreme Lodge show the fact."

According to Sections 32 and 35 the dues of members are 25 cents per quarter, and of holders of endowment policies 75 cents payable quarterly on the first day of January, April, July and October.

It is admitted that the deceased did not punctually pay the dues payable on July 1st and October 1, 1921.

But the plaintiff swears that "they wrote to my husband and asked if the endowment was paid and I sent $2, and Carter wrote and said he paid in the lodge and I sent him $1".

The plaintiff filed in evidence a post office money order dated St. Martinville, September 23, 1921, for $2, and testified that she sent it to De Grey who was a member of the lodge.

There was no evidence as to whose order the order was made, nor that De Grey received it, nor that he paid it to the defendants. He was not examined as a witness.

Cosey, President of the Grand Lodge testified they did not receive it.

Carter was the President of the Silver Moon Lodge. The dollar was received after Murray's death and returned back to the secretary of the local lodge.

W. M. Cosey, President of the Grand Lodge, testified that Murray was suspended on July 10, 1921, and that according to the constitution he could not have been reinstated before his death, and that he was not reinstated.

L. M. King, governor of records of the Dera Knights of Friendship, testified that Murray did not pay his dues for July,

1921; after Murray's death in October they received from Miss Lockett $1 for Murray; when the Grand Lodge discovered that he was dead, they returned the money; Carter did not turn over any money to him for the Grand Lodge.

Ella Levy testified that she called with the plaintiff on President Cosey and that he said he could not pay her because he understood "that Brother Murray was not financial".

Plaintiff relies upon a letter dated, New Orleans, October 4, 1921, written to Murray by L. M. King, in which King wrote, "don't worry about your dues and endowment the lodge keeps up your dues and end".

This letter cannot assist plaintiff, as it was received after Murray's death, and could not have influenced his or her inaction.

Plaintiff also testified that she was not notified that her husband was not in good standing.

She testified, however, that they wrote to her husband. But be that as it may, the want of a notice was no defense, as there is nothing in the laws that requires notice and no evidence that it was customary to give notice.

We are constrained to enforce the Articles of the constitution and by-laws quoted above and the conditions of the policy. See Canal Villere Realty Co. vs. Gumble Realty & Securities Co., 1 La. App. 123.

But we have seen and it is not denied, that Murray failed to pay his dues on July 1st, or within ten days thereafter, and that his failure operated his suspension, as a member. It was not until September 23rd, that his wife testified that she remitted two dollars. If this payment enti-

tled him to reinstatement, it produced no effect, in accordance with the last clause of Section 42 quoted above, "for a period of sixty days after the payment of the arrearages".

In Lo Cicero vs. Society, 1 La. App. 263, we said:

"Where the by-laws of a mutual benefit society provide that a readmitted member shall not enjoy the benefits granted by the society until three months after his re-admission, death of such a member within such time bars recovery by ·his widow of insurance benefits."

It is therefore ordered that the judgment herein be reserved and set aside and it is now ordered that there be judgment rejecting plaintiff's demand at her cost in both courts.